The second case is 25-2199 and 25-2200 FS Medical Supplies, LLC v. Tanner Pharma UK Limited. Mr. Yalowitz, whenever you're ready. Thank you, Chief Judge Diaz, and may it please the court, I'm Kent Yalowitz from Arlington Porter on behalf of FS Medical. The court should reverse the district court's judgment because Section 1332A of 20A U.S.C. A3 provides subject matter jurisdiction. Clause 1 of Section A3 deals with citizens of different states. The language of the text is between citizens of Congress enacted that text in 1948 at a time when it had an established legal meaning. The established legal meaning was centuries old from U.S. Supreme Court cases, and that legal meaning, and I'm reading from the Greeley case, Greeley v. Lowe, was no defendant shall be a same state with the plaintiff, but otherwise there is no limitation upon such jurisdiction. In other words, the door-closing fact is if there are two citizens from the same state, then there's no diversity jurisdiction. But the fact that a citizen might be a citizen of a state and a foreign country was never a door-closer under Supreme Court precedent. Do we look at that phrase in A3 the same way we would look at that phrase in A1? Yes, it's an identical language. It was lifted from A1 and used in A3. So the inference is intended to continue the same meaning that it had developed in A1, absolutely. If you have a case where, say, a Texas plaintiff, like the Leland family who lost their father in a plane crash, sues a defendant from Delaware and Ontario, that was the Boeing of Delaware Corporation, headquartered in Ontario, your intuition is that is a diversity case. It's an out-of-state defendant. There's no overlap between the state citizenships. That's removable, and that's what Boeing of Canada did in the Leland case. The court upheld jurisdiction, and when the party opposing jurisdiction argued that the foreign citizenship contaminated the state citizenship of the corporate defendant, Judge Jones said that's counterintuitive, and there's no support for it in the case law, Judge Edith Jones. It does seem like there are some problems here. You're making a very convincing argument. When you look at A1, at least A3, the whole business of being citizens of different states seems to be established, but the question really comes to is on A1, and that is you have any cases that suggest that if one of those parties is a business entity with dual citizenship, does that apply in that instance? That's the question sort of unique in this case. You got one of the parties, the business entity part of it, AOLC as I understand, is a dual citizen. Right. The answer is yes. There are cases that say where you have a dual citizen business entity, foreign and domestic. What's that case? The Leland case. That's unpublished. That's true. Well, it's not binding on you, but it's persuasive. Unpublished. Unpublished, but important. Mickey Leland was a serious person. But you got something strong in the Leland case. Indeed, I do. I have the Tango case, which is the Seventh Circuit case written by Judge Posner in Tango. Is that issue squarely presented in that case? I mean, it's almost like an afterthought without much, and I get it. Judge Posner is someone that we probably should listen to very carefully as a general matter. But the precise issue that you're arguing here today was not presented in that case, I don't think. Well, I agree with you. It was not presented in the way it's presented here and in the way it was presented and rejected by the Fifth Circuit. But it is a subject matter jurisdiction issue. And when you are evaluating subject matter jurisdiction, you have an independent duty to evaluate it, you the court. And so we know that Judge Posner and Judge Wood, and I forget who the third judge was, but it was a very distinguished panel. They're looking at subject matter jurisdiction. So they can't, if they think that a dual citizen contaminates the state citizenship, they wouldn't say, oh, the parties didn't argue that. I mean, they have an independent obligation to come to the right decision. And then in the Intech case, Judge Easterbrook, admittedly it's dicta, but in the Intech case, Judge Easterbrook is describing our situation exactly, A versus B and C. A is a dual citizen, California and Mexico. B is Illinois and C is Canada. And Judge Easterbrook says in that case, section 1332A3 provides jurisdiction. Again, not holding, but persuasive. We have a series of cases since then, though, at our circuit and at disregard, either the foreign or domestic aspect of citizenships of LLCs. So how does that work in this context? So I want to take you through, first of all, I think it helps us. It helps our side, because what that means is that FS Medical is always a citizen of California. It's always a citizen of China. It's always all of those things all at once. And the question is, the question is, do you, my friends on the other side would say, you have to treat it, you have to pretend that it's not a citizen of a state when you're testing it in some way. And so therefore, it doesn't count as a citizen of the United States. It's like a contamination theory, like the foreign citizenship contaminates the state citizenship, and so it doesn't count. That's their theory. That's the theory that Judge Jones rejected in the Leland case. And the only way to get there is to pretend that it's not a citizen of Texas and California. And I really want to emphasize the reasoning of this court in the general technologies case, because I think it's extremely helpful. And if you remember the general technologies case, that was a party that was a nominal defendant. And so they might be realigned as a plaintiff or as a defendant. It was not clear which they should be aligned as. And the court went through both permutations. And the part of the opinion where the court said, let's treat them as a plaintiff and see what happens is really helpful to our side. The court, and I'm looking at pages 120, we're carrying over to 121 of the general technologies case. It says, if we align EXG as a plaintiff, that's the dual citizen, then XRO, peren Columbia, and EXG, Columbia and Virginia, are suing the various defendants, peren Virginia. And you can see that diagram on page 21 of my means it doesn't qualify as a citizen of a state. They don't say that at all. They say, Virginia's presence on both sides of the controversy destroys diversity. And then the court cites 1332A3, the statute that we're traveling under. And the court quotes it, and it says diversity jurisdiction exists between citizens of different states, and that's italicized. And so the problem in general technologies was that you had a dual citizen, which would have Virginia citizenship against a Virginia citizen. And so you can't have citizens of different states when you got Virginia on both sides. Well, that's, I mean, I would suggest that that's exactly what your colleagues on the other side are doing with respect to the LLC here. They're testing the citizenship of all three of those members, two domestic, one foreign, Chinese, and asking whether or not each one of those satisfies the complete diversity test. And they're saying no. Yeah. And I think that they, I admire their perseverance. They have a fact in search of a legal theory. They jumped on this and they said, you can't have aliens on both sides. Well, that general text says that, doesn't it? You can't have aliens on both sides unless you have citizens on both sides. But they kind of overlooked A3. And then when the district court decided their case, the district court said, well, FS Medical can't be both an alien and a citizen, can't be both a citizen and an additional party. And of course, TPUK is the additional alien party here. So the defendants have abandoned that and now they've come to a third theory. What does additional party mean? Yeah, I think that, I mean, under Tango, it seems like anybody's an additional party. So I don't know whose additional suggests something other than maybe a primary or a real, I don't know what it means. Do you have, what does it mean? Well, they have to be a real party in interest. They can't be a fraudulent joined party. But that's a weird way of describing additional as not fraudulent. The text says additional party that is a citizen or subject of a foreign state. So the difficult question, which we don't have here, is what do you do in a two-party case where you've got a dual citizen on one side and like a New Yorker on the other side? So there's only one foreign citizen and it's a dual citizen. Is there diversity in that case? And the Seventh Circuit seems to have suggested in MAS, which is cited in the briefs, that a dual citizen, that a two-party case doesn't have an additional party. Is Tong an additional party? I'm sorry? Tong. No, no, that's not our argument. We're not arguing that she's a party. We are arguing that her citizenship is immaterial to the question whether FS Medical is a citizen of a state. But she's part of a business entity. Correct. And where you were going, General Technology, but seems to be that for business entities, all of their citizenships have to be considered. Correct. Right. All of their citizenships all of the time. And so they're always a citizen of a state. They're always a citizen of a state. And I want to add one other case to the mix, which is Chief Justice Marshall's opinion in Bank of the United States against DeVos. Oh, you're going way back. Or is it the... Well, actually, we went back to the founding. In our briefs, we talked about the purpose of diversity. And obviously, this case is in the heartland of the purpose of diversity, which is you've got an in-state powerful interest against out-of-state defendants in an important case. And that was Madison at the Virginia Convention. That was Hamilton in the Federalist. That was James Wilson in the Pennsylvania Ratifying Convention. So the heart, the purpose of diversity is obviously met here. And then... Take you back to the question I asked earlier, and I think you conceded this, that let's put aside your client's LLC makeup doesn't include a foreign member. So we have an LLC with members of Virginia and North Carolina, and then a citizen, a plaintiff, and then a defendant, Virginia citizen. In that scenario, there would not be diversity. Correct. So why... Because you're testing each one of the members against the V on the other side, the defendant. Why are we making an exception for the foreign member? Well, so the foreign citizenship is not material to the question whether they're a state citizen. It's just like... We're in North Carolina, so I'll use a basketball analogy. Kyrie Irving is a citizen of Australia, it turns out. So he played on Team USA. His Australian citizenship wasn't disqualifying. He was still able to play on Team USA because he was a citizen of the United States, and that's what counts under the Olympic charter. Kyrie Irving's not suing anybody. Right. But there were things about him that are immaterial. It was immaterial that he was a citizen of Australia, immaterial to the rule that he thinks the earth is flat, immaterial to the rule that he dropped out of Duke. There's a lot of things about him that aren't part of the test. There's no case that says, oh, you test the citizenship by pretending it's not a citizen of a state, and then seeing what happens. That's never been the test. I see that I've exceeded my time. You've got some time left for rebuttal. Okay. Thank you very much. Thank you. Good morning, your honors. May it please the court, Jonathan Ellis, on behalf of the defendant at police, TPUK, Tanner Gap, and the boards. Section 1332A3 vests district courts with diversity of jurisdiction over disputes between citizens of different states with additional foreign parties. As I think the discussion this morning has already indicated, the dispute here before this court is really about that first problem, and whether a dispute, a case with a sole plaintiff that is a business entity with citizenship, domestic and foreign citizenship, can ever satisfy, can ever qualify as a dispute between citizens of different states. Our answer is no, and our rule is the one that we also derive from general technology applications from Slobchap, and from this court, from Grupo, and from Carden. This is the input on the A3. When you look at this statute, A1 talks about the citizens of different states. We've been clear on that. And with the three, it says citizens of different states in which citizens are subjects of foreign states are additional parties. What's the import of the additional party part there? Yeah, so the import of that is that there may, if you can find, if you can identify a dispute between citizens of different states, then unlike under A1, that you can have additional foreign parties, that is to say, literally other parties, not just citizenships of the same party, that can then ride along in that case. And so I understand if they could identify a dispute here between citizens of different states, then TPUK's presence as a foreign defendant would not destroy diversity under A3. But the problem for my friend is that they can't identify a dispute here between citizens of different states, because under general technology applications, in order to satisfy, or to invoke the diversity jurisdiction of a federal court, a unincorporated association must satisfy the diversity test for each of its citizenships. So if you look at, now my friend focused on the part of general technologies that aligned EXG as a plaintiff. I think that's consistent with our view, but I would like to point the court to the next paragraph, where the court aligned EXG as a defendant. And in that case, it said, or if it could, have relied on there only its domestic citizenship. And it could have invoked and satisfied the diversity test of 1332 A2, because it would have been a dispute between a foreign citizen, Colombia, and only domestic citizens. But the court said that because when you take into account its foreign citizenship, it is now a dispute between two foreign parties. And that doesn't fit within any of the buckets of 1332 A. The same analysis was done in Slavchev. That was a case about a dual citizen corporation. If that dual citizen corporation could have relied exclusively on its domestic citizenship, that would have been a dispute between a Bulgarian citizen and a Florida citizen. That would have fit again within 1332 A2. But when the court kept in mind and took account of its foreign citizenship, then it did not qualify under any prong of 1332 A. You're saying general technology in Slavs is not consistent with, or at least they don't follow, wasn't followed in the Leland case out of the Fifth Circuit. No, it was not. And I want to address that decision. It is unpublished, so I think there's something to it. But I'll take it on head on and the reasoning, because Judge Jones is a great jurist, and we should look at it if it's persuasive. But here's what Judge Jones said in Leland. If upon inquiry, the court determines that a domestic corporation's worldwide principal place of business is not in the United States, then the foreign principal place of business cannot be considered for diversity jurisdiction purposes. Cannot be considered for diversity jurisdiction purposes. That was the rule from the Eleventh Circuit at the time, and it was the rule in several other circuits. Congress has abrogated that rule. 1332 C.1 in 2011 was amended to make very clear that for corporations, you can't ignore the foreign citizenship. And in this case, this court in general technology applications made clear that for unincorporated associations, you can't ignore their foreign citizenship. My friend made an analogy to an individual dual citizen. In general technologies, this court said, although individual dual citizens can and must ignore their foreign citizenship, unincorporated associations are different. They may not. And so when you take account FSMS's foreign citizenship, this is not a dispute between citizens of different states, and therefore they can't invoke the diversity jurisdiction of federal courts. Well, let's move on to another distinguished jurist, Judge Posner in the Tango case. Did he just, that panel just overlook the jurisdictional problem? With all respect to Judge Posner, yes. The very first paragraph of that decision lays out the question they're going to answer in that case. Here's what he said. While the U.S. parties are diverse, there are U.K. citizens on both sides of the case, and we must decide whether that destroys diversity jurisdiction. He was only asking this question that was open at one time, but no one's disputing now, whether the additional foreign parties have to be from different foreign states. And he said, no, they don't have to be. We don't disagree with that. He never considered whether the dual citizen, sole plaintiff in that case, could be treated as solely a domestic citizen. Obviously, he wasn't doing that. Or it could be disaggregated, which I understood to be one of my friend's arguments that I think he disavowed this morning, and satisfy A3 in that respect. I will note that Tango, in addition to not actually passing on the question presented here, also issued before Grupo, where the Supreme Court made clear that unincorporated associations have to account for all of their citizenships, and they must be treated as only one party when asking about diversity jurisdiction, not multiple parties. That's what courts have said since then, when they looked at Tango and said, that doesn't control in this case. Tango didn't consider Grupo. Tango didn't consider the actual question about disaggregation that I think my friend has advanced in the briefs, although perhaps backed away from here. It doesn't sound like you're disagreeing that this case would, kind of from the policy standpoints, fit well within diversity jurisdiction. It's just you're saying it's a matter of definitionally, we don't have citizens of different states because we have to consider the dual citizenship. We are not making a policy-based argument. We are applying the rules as we understand them. This would be, at least from that standpoint, a case where diversity would be consistent with those purposes. You just think it doesn't technically comply with the statute. And what I would say on the policy concerns, I understand them, that is that Congress doesn't pursue any purpose at all costs. And there are other considerations here. If there's anything that's evident from Congress's activity in this area over the past, I don't know, five or six decades, is that one of the purposes of Congress is to protect jealously, to guard jealously the federal district court's jurisdiction and dockets from state law claims like the ones at issue here. And in particular, to protect the limits on diversity jurisdiction with regard to dual citizens. We cited the 2011 amendment in our case to see one. I think that is the most relevant of those amendments, but it's not the only one. Congress amended 1332 in 1958, in 1964, in 1988, in 1976, and in 2011, every time restricting diversity jurisdiction. As a result, I think what you find is it's not hard to come up with hypotheticals where you might think that the local bias concern would apply. I mean, take it just an iteration of this case, right? If FSMS had 14 partners instead of, or members instead of four, 13 were California citizens. This is a company that operates exclusively in California, does all its business in California. They can't invoke diversity jurisdiction in the case against North Carolina citizens if they've got a member of this North Carolina citizen with 2% interest. So is the Chinese dual citizenship with China creates the problem in this case? It is the Chinese citizen that is the problem. When you're looking at jurisdiction and you talked about Congress, at the end of the day, you can bring this action in state court. Is that correct? That's correct. This action could be filed in state court today. It seems odd that you can bring a case in state court, regardless of whether or not it's dual citizenship, you've got an LLC involved with China, but you can't bring it in federal court. I don't think that's odd at all, Your Honor. I mean, diversity jurisdiction is always an alternative forum. You're always asking, do the federal courts need to provide another place to have state law claims heard? North Carolina courts are perfectly capable of resolving these questions. And I said, I think this case could be filed today. Now, you won't be surprised to know that we have concerns about tolling on the statute of limitations. But I think if you ask- Is there a statute of limitations problem in this case? We do think, we think there is. But if you ask my friend, he'll say, I understand their position to be that tolling applies to every one of their claims. That's their position in the case that they filed in FSMS-3, the one that's still pending in the Western District. And I expect, I don't want to put words in his mouth, but he would say the same thing if he filed this case today at state court. But that's, I mean, whether or not there's tolling may kind of affect some equities and stuff like that. That can't be the basis of whether there's jurisdiction or not. No, absolutely not. The basis of, yeah, I'm sorry. Because it could, I mean, the real point is it could have been brought in North Carolina. Whether it could be brought today or not based on statute of limitations, you know, may be an issue, but- That's correct. Yeah, no, my point is only that if the concern is, and as expressed in the briefs at some point, that they're not going to have a place to hear the merits of their claims. They certainly had a place to have the merits of their claims heard at the outset of this case before they falsely certified to the citizenship of their members. And they alleged repeatedly that they had diversity jurisdiction without foreign citizenship. And I think, as I say, I think they think they have a place to litigate that now. I suppose had this been brought into state court, you'd been the one asking to have it removed to federal court. You know, this case, one iteration of this case, the very first one was filed in state court in California. And we removed because we understood the allegations to be about that we had diversity of citizenship. The court said, hey, could you help us? I need to know the citizenship of SFMS. We asked them, what is your citizenship? They didn't answer. We did our own research and we told the court as best we could. We think that there's diversity here because their citizenship, as far as we can tell, is Texas and California. We were wrong about that. And that case ultimately was dismissed on personal jurisdiction grounds. But I think it goes to the point that I take in the reply brief that somehow we're the ones at fault here, that the court should then go to its backup arguments here and dismiss TPUK or rely on North Carolina Rule 41B. We've got lots of fundamental problems with those requests. But at bottom, they're both discretionary ones. And I think the only party here to blame for the wasted efforts, for the wasted time, for the fact that we don't think this court, the court has jurisdiction over this case anymore, is FSMS and its failure to properly and accurately certify its citizenship. So I get the discretionary nature of those alternative arguments, I guess. But once you get to them, they're discretionary. But if we don't have jurisdiction, what's your position on whether we could engage in the discretion in the first place? So as to Rule 41B, we do not think a district court or this court could rely on that without subject matter jurisdiction. There is a narrow exception, right, for collateral matters. Those things that are attendant to the presence of a live controversy is how the court said it in short. But those are things like sanctions, maybe protective orders. There's a dispute about that. It is not about the ability to toll a statute of limitations. That is beyond the court's subject matter jurisdiction or power without subject matter jurisdiction. Now, I don't dispute that the Rule 21 or the sort of Rule 21 analog under Newman Green is available, even if the court doesn't have subject matter jurisdiction. Indeed, that's the point of relying on Rule 21, sparingly, the court has said, is to preserve diversity jurisdiction. There, I think the problem is, number one, that my friends forfeited that argument by not asking for and not moving for the dismissal of TPUK in the district court after the jurisdictional problem here came to light. In fact, what they did instead was to file another lawsuit, right, in the Western District after divesting themselves of their Chinese citizenship or attempting to divest. The Newman Green case provides some support, but it seems strange that a federal court that didn't have jurisdiction could operate and that could do something like that. Supreme Court guides us if that's the case, but does the recent Hain case call that into question at all, in your view? I don't think it calls it into question. Hain did refuse to dismiss the party. He didn't do so on subject matter jurisdiction grounds. I think the only relevance we've talked about in the 28 JA letters of Hain and Celestial here is that it made sure that the party had not forfeited the argument before it went on to consider whether to dismiss a party under Rule 21. Here, Judge Reitinger couldn't have been more clear that to the extent that their invitation or their suggestion to the district court that it might invite a motion to dismiss TPUK if it didn't find subject matter jurisdiction was not compliant with federal rules, in particular Local Rule 7.1c2, and therefore it was forfeited. I think that this court shouldn't take up that forfeited request for the first time. Judge, when asked you about if this case had been brought in state court that you likely would have removed based on your assumption that there was diversity jurisdiction, if that, after some time, it turned out to be incorrect and the court dismissed the case for lack of subject matter jurisdiction and the equities weren't as one-sided as you say they are in favor of your client, the district court, yes, still would have been powerless to extend the statute in that instance? Yeah, as we've explained, I think there's at least two different grounds that the district court could not have relied on Rule 41b here. I mean, it is true that diversity jurisdiction and subject matter jurisdiction just has harsh consequences sometimes because it is a fundamental limit on the power of federal courts. But I don't think that either the subject matter jurisdiction analysis goes the other way if we're the ones to have removed. The North Carolina Rule 41b is just beyond a court's power that doesn't have subject matter jurisdiction. And as we raised in the 28J letter last week, I think, in fact, North Carolina Rule 41b doesn't apply at all under the Supreme Court's decision in Berk v. Choi from a couple weeks ago. What that decision says is you've got a federal rule on point that's inconsistent with a state law or a state rule that the federal rule applies regardless of whether you think of the state law as substantive or procedural. Here, there's a federal rule on point. It's 41b, and it doesn't grant powers, district courts, the authority to toll statutes of limitations after an involuntary dismissal. I think that's the rule that should apply. Now, my friend, in his response to 28J, points to this court's decision in Shuford from 1981, putting aside the skepticism that one should have about whether a decision from 1981 could foreclose a decision under a 2026 Supreme Court decision. That case doesn't speak to the issue at all. The only question in Shuford was the question of state law about when the automatic tolling provision under North Carolina Rule 41a began to run after a district court entered a voluntary dismissal under federal Rule 41a. So what is your, I mean, the exception that's being used here with respect to not applying the Rule 41 is that it can only apply to collateral matters. So how do you define that? Yeah, so I can't do better than this court. I think in the short case, this is a case from this court in 1990. It's an unpublished case. I just think it's a persuasive one. It says that the court has inherent authority to engage in those judicial actions attendant to the presence of a live controversy before the court. And so this is really about governing the procedures before that court, the parties before that court. As I said, I think the prime example here is sanctions, right, you cannot lie to a court with impunity just because that court doesn't have such a jurisdiction over the case. This is, I think, a far cry from that. We're not talking about what's gonna happen in the district court or in this court. We're talking about what's gonna happen in another case, in another court going to the merits of that dispute. That is well beyond the collateral power of the inherent authority of a court to attend to the controversy before it. And yet we've had a number of district courts grant such relief. I don't think so. The court has pointed to, though my friends have pointed to a couple of cases that say that post Clark v. Valesky, I think it says that the courts have assumed that federal district courts could grant that relief. Both of those, I think both cases, it's Clark and Huang. The court actually did not grant that relief. And then actually, if you take a look at those cases, Clark in particular says, we're not even assuming that a court could grant that relief. We're not deciding what the rule was. We're just saying, if the court does not grant that relief under North Carolina Rule 41B, then you can't take advantage of the tolling. What type of entity is TPUK? It's a corporation, Your Honor. It operates in the UK. It's an ongoing concern. It's worth pointing out with regard to the dispensability argument. It is sort of the central actor in this case. It is the entity that entered into an agreement with the UK government to supply COVID tests. It's the entity that entered into the contracts with Ornian Gene to get those COVID tests in order to supply them to the UK government. It's the entity that made the profit sharing payments to FSMS that they say were insufficient. The entity that issued the dividends to the Borns that they say are void. It is really the central cog in this entire dispute, which is why I understand FSMS every time they filed this case. They've filed it four times, including once after the jurisdictional issue came to light, has named TPUK as a defendant. It's the only party that's been named as a defendant in every one of these suits. So bottom line in this case, if Tom himself was a separate party rather than a member of FSMS, then there would be jurisdiction. I think that's right. If Tom could classify, could qualify as an additional party under A3, then I think you've got a dual citizen entity like we thought we had for five years that only has domestic citizenship. And then you've got a dispute with two other domestic citizens that are from different states. That's a dispute between citizens of different states. The problem really is the fact that we didn't know that there was a citizenship that the FSMS had the citizenship of Ms. Tong until just recently. And when you do that, when you add that in as the same party, not a disaggregated party, this is no longer a dispute between citizens of different states. But that seems somewhat odd. You don't have jurisdiction based upon that rather minimal distinction. And so I think it's not unusual to find cases where the policy rationale of the two cases look very similar, but Congress has not extended the diversity jurisdiction to that scenario. If you look at the Supreme Court's decision in Carden, there's a passage at the end that I think is particularly relevant here. It gets to there and it says, look, we're gonna treat every single partner of a partnership to be a citizen, a member of this partnership and therefore a citizenship of that partner. And then it says, you might think that the result we reached here is validly characterized as technical, precedent bound and unresponsive to policy considerations. But having a top that approach to diversity jurisdiction for unincorporated associations, we're leaving it to Congress to adjust and respond to policy concerns. I think under the current approach that there is no diversity jurisdiction here, even if you could come up with a compelling policy rationale why Congress might revisit those rules and expand that jurisdiction. One question I'd like your view on, what's the definition as you understand it of additional parties? Yeah, as I understand that, first of all, I think the most important part for this case is that it has to be literally an additional party, not just a citizenship of a single party. But I think beyond that, I think to your question, Your Honor, I think the courts have said you really have to have a real dispute between the citizens of the case. It's something a little bit greater than a fraudulent joint. You've gotta have an actual dispute between those domestic citizens and then you can have additional foreign parties. If the real dispute is between a foreign party and a domestic citizen and the other, the sort of domestic citizens are the additional parties, then there's no jurisdiction here. That's how I understand courts have approached that. We haven't argued about that here. We really think the problem is a different one. All right, thank you, Mr. Ellis. Thank you. Chief Judge, if I have five things I want to tell you, and if I need a little equal time, I hope you'll indulge me, but I should be able to be efficient. Keep us entertained. Great, all right. I want to begin with my friend's concession to Judge Wynn's question about what would happen if we were dealing with individuals instead of an entity and his concession that there would be jurisdiction in that case. That highlights, number one, the absurdity of the defendant's position, what they're trying to do is a gotcha. And it also brings me back to the thing that I wanted to say before at the end of my time about Bank of United States against DeVos. I know it's an old case, but there is a passage in that case that is really timely. Which is right at pages 87 to 88 of the opinion, Chief Justice Marshall is talking about the purpose of diversity, which we all agree with. And he says that where an entity is not treated as a citizen, you look to the citizenships of the members. So he's establishing the rule that is adhered to in Carden and Grupo. This is the case that established that rule. And then he says, substantially and essentially, the parties in such a case where the members of the entity are aliens or citizens of a different state from the opposite party come within the spirit and terms of the jurisdiction conferred by the Constitution on the national tribunals. So this is Chief Justice Marshall linking the purpose with a pass-through entity and saying that in that kind of a case, aliens or citizens of different states work for purposes of the statute. And that time there was no A3. So this is about are there citizens of different states? Well, you just raised the point. This is a question of statutory interpretation, right? Not the Constitution. So Congress could change that. Right. He's applying the statute. This is a statutory. Banking United States against DeVos is a statutory case. So that's the first thing I wanted to cover. The second thing is I couldn't disagree more with the misdescription of this court's decision in general technology. There absolutely was not a reasoning of we're going to test one citizenship and then we're going to test another. They didn't say that. And if you look at the diagrams of that case in my brief on pages 20 and 21, you see the reasoning is we look and that's what the words of the case say. We look at, we look at, we line up the citizens on both sides and see if there's a match. That's general technologies. I also, I want to talk about Leland for a minute. My friend misreads Leland. What Judge Jones was saying is, number one, she was rejecting the exact argument that they were making as counterintuitive. And then she went on and said, and I'm going to follow the 11th Circuit. And there were two reasons why she rejected their argument. I agree the 2011 amendment changed the second reason, but the power of the reasoning remains with the first reason. Number four, the other side points out correctly that there have been many amendments to the statute since 1948. And at least, you know, when I went to law school, which admittedly was a long time ago, the way that, what I learned was the way Congress changes a statute is by amending the words of the statute. And so you don't say, well, the gestalt of the statute is that it's changed. Congress wants to narrow jurisdiction and so they've done a bunch of things. You look at the actual words. And if this contamination idea were important enough to, if it were important enough to be real, Congress would amend the statute in the same way they did with representatives or directed action. I'll follow up on your question. I think Judge Qualibon brought up regarding, seems like it was pertaining to between citizens. And the question that I have is, do you agree that TPUK is an additional party, not a central party? It's an additional party. I don't think that you, I don't think that additional party means like an ancillary party. It just means, it means another party. It doesn't mean like optional party. It means additional party, another party. So if I may just address the Rule 41 issue because it came up and there were a lot of questions about it. And I just want to say two things about the Rule 41 issue. The first is, the reason that we cited this court's decision in Shuford is because the question is, the question that the other side was arguing was that federal Rule 41 displaces the North Carolina Savings Provision. And this court in Shuford applied the Erie Doctrine, applied Shady Grove or the Shady Grove predecessors. And I know this has come up, this came up recently in the West Virginia context, similar to Burke against Choi. It's just the precedent in this court and it is correct, is Rule 41 doesn't displace the North Carolina Statute of Limitations. And the real question, which I think the court was asking is why do we have judicial power to see the case if we're going to see, and I don't want you to,  but why do we have judicial power to invoke a state savings provision once we've decided we don't have jurisdiction? And I would submit that there are several other examples where the court sends a case on its way because it doesn't have jurisdiction and that is perfectly okay. I'm going to give you three examples. So you better do it quickly because you're 10 minutes over. Example number one, 1369. The court says, I don't have personal jurisdiction over this case, so I'm going to transfer it to another district. Example number two, the district court dismisses for lack of jurisdiction and says I'm dismissing with prejudice. This court can correct that and say the dismissal needs to be without prejudice. And then the third example, the one that we've been talking about on appeal, the court says, well, they gave it a good try, but I don't see the jurisdiction. We can fix it. We've concluded there's no jurisdiction, but we can fix it by dropping a party. That's the court, this court's appellate power, inherent appellate power. That happens after there's already no jurisdiction. So if you, and the reason that the court has power to do those things is because they are not merits determinations. All right. Thank you very much. Thank you. I thank both counsel for their excellent arguments this morning. I will come down and greet you here shortly. Come down and greet you and move on to our final case.
judges: Albert Diaz, James Andrew Wynn, A. Marvin Quattlebaum Jr.